# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:19-cv-00463 |
| US CORRECTIONS, LLC, et al. | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

Plaintiff Justin Williams, an inmate of the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed an application for leave to proceed *in forma pauperis* (IFP) (Doc. No. 2) and a Motion for PLRA Screening. (Doc. No. 6.)

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 2) is **GRANTED**. However, the Court declines to assess the filing fee because the fee has already been assessed against Plaintiff in connection with

his original attempt to file this lawsuit (Case No. 3:19-cv-00261), which was dismissed without prejudice.

## II. INITIAL REVIEW OF THE COMPLAINT

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However,

pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

Plaintiff alleges that on February 3, 2019, at 3:00 a.m., he was picked up in a prisoner transport van driven by two unnamed Defendants, for transport from Gainesville, Florida to NWCX in Tennessee. (Doc. No. 1 at 2.) He alleges that the van was overcrowded, with seven prisoners on board, and that the drivers had contacted dispatch to see if a larger van were available but were denied. (*Id.*) Within ten minutes of beginning the 13½-hour trip, "the air-conditioning and ventilation system completely stopped functioning." (*Id.* at 2–3.) After about fifteen minutes of banging on the side of the van, the prisoners succeeded in getting the drivers to stop the van. (*Id.* at 3.) After being informed that the ventilation was not working, the drivers "fiddled with several wires and switches for about 5 minutes" before determining that they could not fix the problem. (*Id.*) The drivers advised the prisoners that they had "contacted dispatch and [were] told

3

to continue onward because no other vehicles were available," and that "it was just a short ride to the holding facility at Waycross, GA." (*Id.*) They further stated that "it was Super Bowl night and they couldn't accept [any] delays because no matter what they had to be at home before the game." (*Id.*)

Plaintiff alleges that the van continued traveling north for approximately four hours before arriving at the next stop, an "unknown county jail" where the prisoners exited the van and "hydration" was made available. (*Id.* at 3, 4.) Plaintiff alleges that the group of prisoners "advised the drivers that they needed to call another vehicle or get the a/c fixed," but the drivers advised that the destination was "like 30 minutes" away. (*Id.* at 3.) The prisoners got back in the van and "continued onward for another 6 hours before the next stop." (*Id.*)

By the time the van reached the next stop, Plaintiff "had suffered delusions and had lost consciousness at least one time" due to the lack of air conditioning and ventilation. (*Id.*) When he advised the drivers that he had severe heat exhaustion, the drivers gave him "a small sized [G]atorade" but told him that they would not call 911 unless he appeared to stop breathing, because they could not afford any delays. (*Id.*) Plaintiff alleges that when another prisoner lost consciousness in the drivers' presence, they told him to "stop faking." (*Id.*) The van continued on after this stop for at least three hours before arriving in Waycross, Georgia. (*Id.* at 3–4.) During that time, Plaintiff "continued to have delusions and exhibit signs of severe exhaustion, severe dehydration, and possible heat stroke." (*Id.*) He alleges that upon arrival at the Waycross holding facility, he vomited twice. (*Id.* at 4.)

Plaintiff alleges that the nurse at Waycross confirmed "that since [he] was not an inmate of the county, the transport company would not pay for any kind of medical care except medicine disbursement from [what] the detainees [had] with them . . . and medical emergencies." (*Id.*) He

4

alleges that he was kept at the Waycross holding facility for four days, during which he was not provided any medical treatment. (*Id.*) He "was then placed in a second transport van and transported to [his] final destination without further incident."

Plaintiff has sued US Corrections, LLC and US Prisoner Transport, entities he alleges to be located in Nashville, Tennessee, as well as the unidentified drivers of the van who he alleges work for US Corrections, LLC. (Doc. No. 1 at 1–2.) He claims a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment "by being subjected to extreme heat and lack of ventilation and also for denying medical treatment(s)." (*Id.* at 5.) He seeks five million dollars in compensatory damages "due to physical and emotional injuries," and ten million dollars in punitive damages. (*Id.* at 6.)

**D. Analysis**

As a preliminary matter, although the complaint describes events that took place in Florida and Georgia, it alleges that the Defendants are based in Nashville and are residents of this judicial district. Accordingly, venue is appropriate in this district. 28 U.S.C. § 1391(b)(1), (c)(2). Furthermore, although Defendants US Corrections, LLC and US Prisoner Transport appear to be private companies, the Court assumes for purposes of this initial review that they and their drivers were operating as state actors in this case, as they were performing an "exclusive government function" in transporting state prisoners, something they could not have done without state authorization. *See Nguyen v. Prisoner Transportation Servs.*, No. 3:18-cv-00871, 2019 WL 429678, at *4 (M.D. Tenn. Feb. 4, 2019) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

1. <u>Eighth Amendment Claim—Objective Component</u>

Plaintiff claims that the conditions of his confinement during his transport from Gainesville, Florida to Waycross, Georgia violated his right under the Eighth Amendment to be free from cruel and unusual punishment. To state a viable Eighth Amendment conditions-of-confinement claim, Plaintiff must allege a deprivation that is objectively, sufficiently serious. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). The Constitution does not mandate comfortable conditions of confinement, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but tolerates "routine discomfort" as part and parcel of the punishment criminal offenders must endure. *Hudson*, 503 U.S. at 9.

"It necessarily follows, then, that a pre-trial detainee or prisoner has not been subjected to cruel and unusual punishment simply because he has been made to feel uncomfortable during the course of a transfer from one prison to another." *Nguyen*, 2019 WL 429678, at *5; *see Myers v. Transcor America, LLC*, No. 3:08-0295, 2010 WL 3619831, at *8 (M.D. Tenn. Sept. 9, 2010) (allegations about physical conditions in prison transport van properly analyzed as conditions-of-confinement claim under *Rhodes*). Rather, it is only those conditions that result in the denial of the "minimal civilized measure of life's necessities" which constitute cruel and unusual punishment. *Rhodes*, 452 U.S. at 347. To meet this objective standard, "extreme deprivations are required." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Presuming the truth of Plaintiff's factual allegations and viewing the complaint in the light most favorable to him, the Court nonetheless finds that the conditions of his confinement on February 3, 2019, were not so extreme as to make plausible his claim of cruel and unusual

punishment. While the Court does not doubt that the lack of air conditioning and ventilation in a small, crowded space produced an uncomfortable environment, "uncomfortable and even harsh living conditions are part of the penalty of incarceration." *Bain v. Transcor America, LLC*, No. 3:08-0656, 2009 WL 4348598, at *4 (M.D. Tenn. Nov. 24, 2009) (citing *Rhodes*, 452 U.S. at 347); *see also Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004) (finding that cell temperatures around 85 degrees during summer months, and reaching as high as 95 degrees on seven days during July and August, were "to be expected in a residential setting in Florida in a building that is not air-conditioned" and did not satisfy objective component of Eighth Amendment claim). Plaintiff was confined to that uncomfortable environment for roughly 13 hours, which is not an excessive period of time under the circumstances. *Cf. Myers*, 2010 WL 3619831, at *9 (finding that factors including temporary nature of uncomfortable conditions in prison transport van, "affecting the plaintiffs for only a day or two during their transport trips," weighed against any constitutional violation); *Bain*, 2009 WL 4348598 at *5 (finding that fluctuation between extreme heat and extreme cold in transport van lasted "for only two days" and did not cause "condition so extreme as to violate contemporary standards of decency").

Furthermore, the van made two stops on the trip, during which Plaintiff was either permitted to exit the van and hydrate or was provided a bottle of Gatorade. Although Plaintiff alleges that he suffered delusions and, at some point prior to the final three hours of the drive, "at least one" instance of loss of consciousness due to the heat in the van (Doc. No. 1 at 3), he does not allege that he required emergency medical treatment or suffered any residual injuries. It thus appears that the conditions of his transport, while unpleasant and uncomfortable, were not unconstitutional. *See Ricard v. P.T.S. of America, LLC*, No. 3:14-cv-02308, 2015 WL 247883, at *3 (M.D. Tenn. Jan. 20, 2015) (dismissing complaint at screening stage for failure to allege "any

type of injury arising from" conditions on transport bus, which did not allow prisoner who had had surgery on both knees to stretch his legs during 3-4 day trip); *Wright v. J & S Extradition Servs., LLC*, No. 3:11-0464, 2012 WL 1681812, at *7 (M.D. Tenn. May 11, 2012) (holding that even if prisoner transport "had wantonly inflicted discomfort upon Plaintiff, it does not appear that the acts complained of 'required immediate medical attention or evidence[d] physical injury besides discomfort'") (quoting *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009), which affirmed screening dismissal on basis that temporary chest pain, headache, back pain, difficulty breathing, and denial of prisoner's request to use asthma inhaler during transport van ride were no more than de minimis injuries).

In short, the complaint fails to plausibly allege conditions of confinement extreme enough to support the objective component of Plaintiff's Eighth Amendment claim. *Cf. Nguyen*, 2019 WL 429678, at *6 (finding objective seriousness of deprivation sufficiently alleged based on 15-day van trip during which prisoners endured purposefully reckless driving which resulted in specific physical injuries; necessity of eliminating bodily waste in van due to insufficient hygiene stops; extreme temperatures due to van lacking ventilation and air conditioning; riding in complete darkness and in restraints; and forced sleep deprivation); *see also King v. Berghuis*, No. 1:10-cv-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) ("[A]bsent such extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning [cell] ventilation were insufficient to state an Eighth Amendment claim.") (collecting cases).

2. Eighth Amendment Claim—Subjective Component

Even if the complaint could be found to adequately allege a deprivation of the "minimal civilized measure of life's necessities," a conditions-of-confinement claim also requires plausible allegations that prison officials were deliberately indifferent to the health or safety of the prisoner.

8

*Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991) (applying standard articulated in *Estelle v. Gamble*, 429 U.S. 102, 104–05 (1976)). Although the prisoner need not allege that a prison official acted maliciously or sadistically, mere negligence is not enough to establish the level of subjective culpability this standard requires. *Id.* at 305. Rather, a claim based on inhumane conditions of confinement must be supported by allegations that a prison official knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, "the Supreme Court has noted that 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [deliberate indifference].'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838).

In this case, the van drivers are alleged to have responded to the prisoners' initial complaint by attempting to repair the ventilation system and contacting dispatch to see if another van was available, which it was not. At their first scheduled stop, the prisoners were allowed to exit the van (Doc. No. 1 at 3) and were apparently provided the opportunity to hydrate. (*See id.* at 4 ("At no time was any other hydration made available to me . . . except the stop made at an unknown county jail . . . about 4-5 hours into the trip.").) It was at their second stop, some ten hours into the trip, when Plaintiff first advised the drivers that he was experiencing symptoms of "severe heat exhaustion." (*Id.* at 3.) The drivers responded by providing Plaintiff with a bottle of Gatorade and telling him that they would not call 911 over such complaints, but would only do so if he "appeared to stop breathing." (*Id.*) They then proceeded to finish the remaining three hours of the trip. Based on these allegations, the Court finds that Plaintiff has not sufficiently pled that the drivers knew of

and disregarded an *excessive* risk to his health or safety. At best, he has alleged that the drivers should have known that he faced a more significant medical risk than dehydration and should have responded by seeking emergency medical treatment once he reported his heat exhaustion symptoms to them, rather than finishing the trip. (*Id.* at 4.) These allegations are more consistent with a negligence theory than deliberate indifference.

### 3. Corporate Liability

Finally, to hold the corporate Defendants liable, Plaintiff cannot rely on a theory of *respondeat superior* or vicarious liability, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996), but must allege an injury caused by the execution of some corporate policy or custom. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Even if Plaintiff has properly alleged that the drivers' decisions were guided by corporate policy,[1] he has failed to adequately allege that those decisions or policies caused more than the "uncomfortable and even harsh living conditions [that] are part of the penalty of incarceration." *Bain*, 2009 WL 4348598, at *4.

In sum, Plaintiff's allegations are insufficient to support the Eighth Amendment violation he claims. The complaint is therefore subject to dismissal.

### III. CONCLUSION

For the reasons given above, Plaintiff's application to proceed IFP (Doc. No. 2) is **GRANTED**; his Motion for PLRA screening (Doc. No. 6) is **GRANTED**; and the complaint is **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Plaintiff alleges that "dispatch" directed the initial decision to continue the trip after the van's ventilation system malfunctioned because no other vehicles were available. (Doc. No. 1 at 3.) He further alleges that "the transport company" would only approve payment for medical treatment in an emergency. (*Id.* at 4.)

This is the final Order denying all relief in this case. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE